# UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
OCT 22 2010
LAWRENCE K. BAERMAN, CLERK
ALBANY

__NORTHERN__ DISTRICT OF __NEW YORK__

UNITED STATES OF AMERICA

v.

GIRIDHAR C. SEKHAR

## CRIMINAL COMPLAINT

CASE NUMBER: 1:10-MJ-0524-ORH

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On November 18, 2009, in Albany County, in the Northern District of New York defendant(s) did,

transmit in interstate commerce, a communication containing a threat to injure the reputation of the addressee (L.B.), with the intent to extort a thing of value from L.B. and the State of New York.

in violation of Title __18__ United States Code, Section(s) __875 (d)__

I further state that I am a(n) __Special Agent with the Federal Bureau of Investigation__ and that this complaint is based on the following facts:

See attached affidavit.

Continued on the attached and made a part hereof.  _X_ Yes __ No

Signature of Complainant
M.D. McDonald
Special Agent, FBI

Sworn to before me, and subscribed in my presence,

October 22, 2010                       at        Albany, New York
      Date                                       City and State

Randolph Treece, U.S. Magistrate Judge
Name and Title of Judicial Officer            Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

M. D. McDONALD, being duly sworn, hereby deposes and states as follows:

**Statement of Experience**

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), currently assigned to the Albany Division, "White Collar Crimes" Squad. I have been employed as an FBI Special Agent for approximately eight years. Prior to my employment with the Federal Bureau of Investigation, I was an attorney duly licensed to practice law in the courts of the State of New York and the United States District Court, Northern District of New York, specializing in criminal prosecution and criminal defense.

2. I have participated in numerous criminal investigations, including "white collar" crimes such as financial institution fraud, wire fraud, health care fraud, money laundering, civil rights and public corruption cases, as well as organized crime and drug investigations. I have received training in the areas of white collar, drug, organized crime and other areas of criminal investigation at the FBI Academy in Quantico, Virginia and thereafter in continuing educational courses and seminars. I have participated in numerous interviews of witnesses and subjects in criminal cases, and have discussed with many of them their practices of engaging in criminal activity and of keeping records pertaining thereto. I have also spoken to several senior FBI Special Agents and Supervisory Special Agents who have many years of experience in investigations such as that which is summarized herein-below. Combined, the Special Agents have participated in hundreds of investigations, and have imparted the substance of many of their investigations to me.

Page 1

3. I am familiar with the facts set forth in this affidavit based on personal knowledge and information provided by other FBI Special Agents and criminal investigators who have participated in the investigation summarized herein. Specifically, as a case agent assigned to this matter I have conducted portions of the investigation personally and I have spoken with and reviewed reports of other FBI Special Agents and Task Force Officers relating to the subject matter herein. Unless otherwise indicated, the information contained herein was obtained by Special Agents of the Federal Bureau of Investigation and/or investigators employed by the Office of the District Attorney for the County of Albany, State of New York ("Albany County DA's Office"), which has participated jointly in the investigation summarized herein.

**Statement of Objective**

4. This affidavit is being submitted in support of a felony criminal complaint and warrant for the arrest of **GIRIDHAR C. SEKHAR** pursuant to Title 18, United States Code, Section 875(d), which prohibits the interstate transmission of a threatening communication.

**Background**

5. **GIRIDHAR C. SEKHAR** resides at 1501 Beacon Street, Apartment # 1705, Brookline, Massachusetts. During the time period discussed in this affidavit, he was employed as a managing partner of a financial services company known as F.A. Technology Ventures ("FATV").

6. FATV is a venture capital and private equity investment company with offices in Boston, Massachusetts and Albany, New York.

7. The Comptroller for the State of New York is Thomas DiNapoli. The Office of the Comptroller of the State of New York (hereinafter, "OSC") is charged, among other things, with

the duty to invest money on behalf of the New York State Common Retirement Fund.

**Summary of Investigation**

8. In November 2009, the Federal Bureau of Investigation and the Albany County DA's Office initiated an investigation based on information provided by an individual employed at OSC as General Counsel, L.B.

9. L.B. reported that he had received a series of electronic mail ("email") messages from a then-unknown sender. The email address for the sender was "**nyethics@yahoo.com**". The email messages threatened to expose an alleged inter-office, extramarital affair, that the sender alleged involved L.B., unless L.B. acquiesced to the sender's demands. The sender's primary demand was that L.B. reverse his prior advice to the Comptroller regarding a contract for investment of Common Retirement Fund revenue with FATV.

10. Prior to the time the emails were sent, FATV had proposed a contract with the OSC in which it would be responsible for investing $35 million dollars of Common Retirement Fund revenue through the OSC's "In-State" investment program. The proposed investment contract with FATV had been viewed favorably by OSC's investment staff during preliminary stages of review. However, in October 2009, L.B. advised the ethics committee reviewing the proposal that he possessed confidential information related to an investigation by the Attorney General for the State of New York and based on that information, recommended against the proposed investment with FATV. Following L.B.'s advice and further deliberation, the Comptroller decided against the investment with FATV, and that decision was communicated informally by L.B. and others to the company.

11. Following OSC's communication to FATV that the proposed investment contract was unlikely to go forward, on November 17, 2009, L.B. received the first of the series of emails. The email was sent to L.B.'s work account from **"nyethics@yahoo.com"**. The sender purported to have knowledge of a "serious ethical issue" in the OSC involving senior staff members, and sought L.B.'s personal email address for future communications about the matter in order to maintain confidentiality. L.B. advised the sender to report his/her problem through proper channels, but also provided a personal email account to the sender.

12. The following day, L.B. received the following email directed to his personal account:

Date:  11/18/2009
To: [L.B. personal account]
From:  nyethics@yahoo.com
Text:   "Dear Mr. [B], I am glad we are handling this ethics situation through your personal email, because this ethics issue involves YOU and I am bringing it to your attention becuz [sic] I sincerely don't want you to get hurt and it would be bad if anyone in your office read this even your secretary. Last week you did something that was wrong. U blackballed a recommendation on a fund from the investment staff becuz they had a relationship with a friend of mine. U implied that this friend was dirty and that [the Comptroller] should stay away for political reasons. That is just wrong and unethical and it undermines the function of this office. [...] U accuse her of being dirty, but U saw nothing unethical in having an affair with [a co-worker] (*note: title omitted)? I know about your tryst with [...] (*note: initials omitted), and I have more than enough to prove it including messages and witnesses. [...] Do you realize how this affair has stalled activity in our office and created a hostile work environment? [...] I am not here to make any money off you or cause you any trouble. I just want the madness in this office to end and I need you to make a fix. Here is what I want you to do: 1) Go to [...] (*note: a list of initials of ethics staff has been omitted), et al. and tell them you've had a few days to think things over and have had a change of heart. You now recommend moving forward with this fund and accepting the decision of the investment staff. 2) You will make  reason such as you reviewed the files and realize that this fund is very important to the In State investing program because they are so active in upstate New York and have created so many jobs. You now believe that to not do this fund would cause terrible disaster to the In State investing program, and that there is a great political liability to [the Comptroller] to do so. 3) You will reverse your terrible statements on my friend and say positive things. You need to do this by THIS FRIDAY November 20. If you do not do so by Friday, each day I will release the [...] (*note: initials omitted) information to a different person in your life the following week: by Monday, to [your wife] (*note: name omitted), by Tuesday, to [your co-worker] (*note: name omitted), by Wednesday, to [the

Page 4

Comptroller] (*note: name omitted), by Thursday, to the Inspector General, by Friday, to Cuomo [*note: your affiant believes "Cuomo refers to NYS Attorney General Andrew Cuomo], by Monday week after, to the Albany Times Union. It will make a juicy story about an ethics scandal in the ethics office of the comptroller. I am sure in your paranoia U will try to figure out who I am. But I am not who you think I am. I am the quiet one who doesn't have a big job or make a lot of money. I like people, and I don't like to see good people hurt. I am not going to be a pest in your life, or a dark cloud hanging over your head. I just want to see evidence that you're a person who can do the right thing. Don't look for me. Don't try to figure out who sent this to you. If U do, the files will be sent to Cuomo et al. You should just go about your normal work day and you will never hear about this again. I promise you that I'm not out to get you or keep sending you dark emails. I just want our office to function normally."

13. Later that day and the next, L.B. received the following two e-mails:

Date:  11/18/2009
To:    [L.B. work and personal accounts]
From:  nyethics@yahoo.com
Text:  "36 hours left, to make the wrong right."

Date:  11/19/2009
To:    [L.B. work and personal accounts]
From:  nyethics@yahoo.com
Text:  "24 hours left, to make the wrong right."

14. On November 19, 2009, the sender nyethics@yahoo.com sent L.B. an email containing a "draft" letter to the Attorney General for the State of New York which reported "an illicit extramarital affair" between L.B. and a co-worker. The sender suggested that L.B. provide "guidance" as "an expert in the law" so the letter would "be in good shape when I send it out next week." The email threatened, "If you don't like this draft ... then you should go forward with the other solution that I suggested in the other email from yesterday. That might put a quick end to the problem." L.B. received another email from the sender on November 23, 2009, which stated in part, "If you can get this fixed by Wednesday you will never hear about this again." A final email read as follows:

Page 5

      Date:  12/01/2009
      To:    [L.B.'s work and personal accounts]
      From:  nyethics@yahoo.com
      Text:   "Hope you had a great holiday. What do U think of that Tiger Woods story? Who would have thought that a woman could get that upset... and over what?

15. L.B. reported that he was located in Albany, New York, at the time he received each email message described above.

16. FBI personnel determined the origin of the email messages nyethics@yahoo.com sent to L.B. This could be done because the route of an email message can be deciphered by analyzing the numeric codes associated with the internet protocol ("IP") address and the internet service providers ("ISP") along which the emails are transmitted along the internet. Because IP addresses are unique to particular internet providers and connections, investigators can ascertain the physical location of the computers accessing the internet as well as the person or firm by whom the service is being subscribed. By obtaining records from ISPs, whose provision of internet service to subscribers is enabled by assignment of specific temporary IP addresses to the customers' residence, business or other location.

17. In this case, FBI personnel determined that four of the email messages detailed herein-above originated from a computer with an IP address of 98.216.14.47. FBI personnel obtained records from the relevant ISP, Comcast Cable, and the records showed that IP address had been assigned to the residence of **GIRIDHAR C. SEKHAR**, at 1501 Beacon Street, Apartment # 1705, Brookline, Massachusetts. FBI personnel determined the other email messages detailed above originated from a computer with an IP address of 64.245.140.100. FBI personnel obtained records from the relevant ISP (XO Communications), and the records showed that IP address had been assigned to a company with a New Jersey address associated with

Page 6

FATV. The associated company reported that it has a computer server at its New Jersey address that processed email communications for FATV.

18. On December 3, 2009, law enforcement officers executed a search warrant at **GIRIDHAR C. SEKHAR**'s residence. Among the items seized was a desktop computer, and laptop computer owned by FATV, assigned to **SEKHAR**. A forensic examination of the computers revealed that text identical to some of the email messages received by L.B. was present in the memory of one of the computers.

19. During the execution of the search at his residence, law enforcement officials conducted an interview of **GIRIDHAR C. SEKHAR**. During the interview, **SEKHAR** acknowledged he had a desktop computer and laptop at his residence; that access to the computers was restricted to himself and his wife; that the company of which he was a managing partner (FATV) was experiencing financial turmoil; that his wife knew nothing about the emails; and that he had sent at least one of the emails, later revising that statement to include "the emails". **SEKHAR** further admitted that he had offices in Boston, New York City and New Jersey and reiterated he was responsible for the emails and no one else was involved. **SEKHAR** then claimed that he was "carrying the weight of the world" and he felt responsibility for the employees of the company. In addition, when asked by his wife what "this was about," **SEKHAR** replied "sometimes you try to be the hero and end up being screwed". **SEKHAR** then claimed that he obtained information about L.B. from an undisclosed source and was using the information to try to obtain an audience with Comptroller DiNapoli pertaining to an OSC investment with FATV.

20. During the search at **SEKHAR**'s residence, investigators found a piece of paper containing handwritten notes in his wallet. The handwritten notes included the names of L.B.'s wife and children, the wife's telephone number and email address, the names of the schools attended by L.B.'s children, two telephone numbers for L.B. and L.B.'s OSC email address.

**Conclusions**

21. Based on the foregoing, I believe that, in November and December 2009, **GIRIDHAR C. SEKHAR** sent communications utilizing Yahoo email account nyethics@yahoo.com to L.B. I believe further **GIRIDHAR C. SEKHAR** sent said communications, which included a threat to harm the reputation of L.B., with the intent to extort from L.B. and his employer, the State of New York, a thing of value, to wit: a contract for the investment of $35 million dollars of Common Retirement Fund revenue.

22. Based on the foregoing, I believe that all of the threatening communications (email messages) were transmitted in interstate commerce, in that all of the email messages originated from a computer located in SEKHAR's residence in Brookline, Massachusetts, or SEKHAR's office located in Boston, Massachusetts. I further believe some of the threatening email messages were routed through a computer server located in New Jersey, which was maintained by a company associated with FATV.

23. WHEREFORE, based on the foregoing there is probable cause to believe GIRIDHAR C. SEKHAR, with intent to extort from L.B. and his employer, the State of New York, a thing of value, transmitted in interstate commerce, communications containing threats to injure the reputation of the addressee, in violation of Title 18, United States Code, Section 875 (d) (interstate threatening communications).

Dated: 10/22/2010

M. D. McDonald
Special Agent
Federal Bureau of Investigation
200 McCarty Avenue
Albany, NY 12209

Sworn to before me, and subscribed in my presence,

October 22, 2010          at     Albany, New York
Date                             City and State

RANDOLPH TREECE
United States Magistrate Judge - N.D.N.Y.
Name and Title of Judicial Officer          Signature of Judicial Officer